**VINCENT et al., Appellants,**

v.

**NEYER, d.b.a. Arthur Murray Franchised Dance Studio, Appellee.**

[Cite as *Vincent v. Neyer* (2000), 139 Ohio App.3d 848.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–344.

Decided Sept. 28, 2000.

*Kegler, Brown, Hill & Ritter Co., L.P.A., R. Kevin Kerns, Ted M. McKinnis* and *John Lowe IV,* for appellants.

*Haffey & Segreti* and *A. Mark Segreti, Jr.,* for appellee.

TYACK, Judge.

On November 23, 1999, Ken and Sandy Vincent filed a complaint in the Franklin County Court of Common Pleas against Michael J. Neyer, d.b.a. Arthur Murray Franchised Dance Studio (hereinafter "Neyer"). The Vincents set forth claims for breach of contract, unjust enrichment, promissory estoppel, and violations of the "Prepaid Entertainment Contract Act." The Vincents alleged that on January 20, 1999, they entered into a written contract with Neyer for a series of dance lessons at a cost of $1,746. The Vincents paid this amount in full. The complaint avers that prior to beginning the lessons, the Vincents were informed that the dance instructor they contracted for was no longer employed by the dance studio. The Vincents requested their money back, but Neyer never returned it. In their prayer for relief, the Vincents requested, in part, compensatory, double, treble, and punitive damages.

Neyer filed an answer and, on December 30, 1999, Neyer filed a motion, pursuant to R.C. 2711.02, for a stay pending arbitration. The written contract for dance lessons contained an arbitration clause, and Neyer contended the issues in the case fell under such clause. The Vincents filed a memorandum contra, and Neyer filed a supplemental memorandum and a reply.

On February 11, 2000, the trial court rendered a decision granting Neyer's motion for a stay. A final order was journalized on March 1, 2000. The Vincents (hereinafter "appellants") have appealed to this court, assigning the following error for our consideration:

"'The trial court erred in preventing Ohio consumers from enforcing their rights under the Prepaid Entertainment Contracts Act by ordering the case stayed pending arbitration pursuant to an eight point font arbitration clause contained on the back side of onion-skin paper in an adhesion contract that violates an Ohio consumer protection statute where (1) the policy of this State is contrary to the trial court's decision, (2) claims outside of the written contract were pled and (3) the contract is unenforceable."

Appellants contend, in essence, that the trial court erred in granting the motion for a stay pending arbitration. Arbitration is addressed in R.C. 2711.02, which states:

"If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *."

█ Arbitration is encouraged as a method to settle disputes, and a presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859, 865. The arbitration provision in the case at bar states:

"Any controversy or claim arising out of or relating to this agreement shall be settled solely by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association * * *."

The arbitration clause is very broad in its scope and would cover all the claims asserted by appellants against Neyer (hereinafter "appellee"). Appellants, however, set forth various arguments as to why such arbitration clause does not apply.

█ Appellants first contend that the consumer protection statutes reflect a policy that consumers should be able to enforce their rights under such statutes in court and not in arbitration. As indicated above, appellants claimed that appellee violated certain provisions which fall under the "Prepaid Entertainment Contract Act." The Consumer Sales Practices Act ("CSPA") contains provisions specifically covering so-called prepaid entertainment contracts—the type of contract at issue in the case at bar. Such provisions are found in R.C. 1345.41 to 1345.50. For the reasons that follow, we find that the CSPA does not reflect a policy that claims falling under it be enforced in court and not in arbitration.

R.C. 1345.48(A) states that failure to comply with R.C. 1345.41 to 1345.50 constitutes a deceptive act or practice in violation of R.C. 1345.02. A consumer

has a cause of action for violation of R.C. Chapter 1345, and such consumer may rescind an act prohibited by R.C. 1345.02 or recover his or her damages. R.C. 1345.09(A). A common pleas or municipal court has jurisdiction over claims arising from a consumer transaction subject to R.C. 1345.02. R.C. 1345.04. Such consumer may also seek a declaratory judgment, an injunction, or other appropriate relief against an act that violates R.C. Chapter 1345. R.C. 1345.09(D).

■ Nothing in the above sections precludes arbitration clauses in consumer sales contracts, including prepaid entertainment contracts. See *Smith v. Whitlatch & Co.* (2000), 137 Ohio App.3d 682, 739 N.E.2d 857. The fact that R.C. 1345.04 confers jurisdiction upon common pleas and municipal courts in cases arising under the CSPA does not preclude arbitration of such claims. *Stehli v. Action Custom Homes, Inc.* (Sept. 24, 1999), Geauga App. No. 98–G–2189, unreported, 1999 WL 778382.

■ Appellants also cite R.C. 1345.49 in support of their contention that Ohio policy does not favor arbitration in cases involving prepaid entertainment contracts. R.C. 1345.49 states:

"Any waiver by the buyer of the provisions of sections 1345.41 to 1345.50 of the Revised Code is contrary to public policy and is void."

In signing a prepaid entertainment contract containing an arbitration clause, a buyer is not thereby waiving any of the provisions set forth in R.C. 1345.41 to 1345.50.[1] Again, there is nothing in the CSPA, including R.C. 1345.41 to 1345.50, that precludes an arbitration panel from ruling on issues arising under such sections.

Finally, we note that R.C. 2711.01(B) and (C) set forth those controversies to which the arbitration statutes do not apply, and controversies arising out of the CSPA are not listed therein.

Given all of the above, we find that appellants' contention that Ohio policy disfavors arbitration in cases involving prepaid entertainment contracts is without merit.

■ Appellants next contend that R.C. 2711.01 does not apply because they seek rescission of the contract, and their claims do not arise out of the contract. R.C. 2711.01(A) states:

---

1. Such sections provide, for example, the requirements for the contents of prepaid entertainment contracts (R.C. 1345.42), the right to cancel prepaid entertainment contracts (R.C. 1345.43), and the form of such contracts (R.C. 1345.44).

"A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid * * * except upon grounds that exist at law or in equity for the revocation of any contract."

Appellants also contend that, at the very least, the trial court should first make a determination as to the whether the contract is valid and enforceable.

In support of their contentions, appellants cite this court's decision in *Legue v. Bill Swad Chevrolet, Inc.* (Aug. 20, 1992), Franklin App. No. 92AP–390, unreported, 1992 WL 208922. In *Legue*, this court reversed the trial court's grant of a motion to dismiss for failure to arbitrate. The plaintiffs had sought, in part, rescission of an agreement to purchase an automobile from the defendant. Such agreement contained an arbitration clause. This court noted that the plaintiffs could seek rescission on the common-law basis of fraud and pursuant to statutory authority under the CSPA. *Id.* at 3. This court stated that by requesting rescission as a remedy, the plaintiffs were not seeking enforcement of their rights or remedies under the contract. *Id.* Because the remedy of rescission was unrelated to the contract, the matter could not be submitted to arbitration pursuant to the arbitration clause unless the trial court first made a legal determination that the contract was valid and enforceable. *Id.* The trial court, therefore, improperly sent all issues to arbitration without first addressing the validity of the contract, which included inquiries into the validity of the arbitration clause embodied therein, and determining whether there was fraud in the inducement of the contract. *Id.* at 3–4.

It appears that appellants would have this court rely on *Legue* in support of a conclusion that a motion for stay pursuant to R.C. 2711.02 may not be granted when a plaintiff, in a case involving a contract with an arbitration clause, asserts that the contract is unenforceable and/or requests rescission of the underlying contract. However, for the reasons that follow, appellants' reliance upon *Legue* is misplaced.

First, contrary to what appellants state on appeal, they never requested rescission in their prayer for relief. Rather, appellants requested monetary damages. Further, *Legue* was decided in 1992. Since then, the Supreme Court of Ohio has addressed the essential issue involved in *Legue*. In *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 692 N.E.2d 574, the plaintiff brought a fraud claim arising out of an agreement that created a brokerage account. Such agreement contained an arbitration clause. The defendants filed a motion to stay pursuant to R.C. 2711.02. The trial court denied the motion on the basis the plaintiff had been fraudulently induced into signing the agreement which contained an arbitration clause. *Id.* at 500, 692 N.E.2d at 576–577.

■ The Supreme Court indicated that the issue before it was whether a claim that a contract containing an arbitration clause was induced by fraud can defeat an R.C. 2711.02 motion to compel arbitration. *Id.* at 500–501, 692 N.E.2d at 576–577. The Supreme Court held:

"To defeat a motion for stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced." *Id.* at syllabus.

■ In so holding, the Supreme Court noted that R.C. 2711.01(A), quoted above, generally acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits. *Id.* at 501, 692 N.E.2d at 577. Because the arbitration clause is a separate entity, an alleged failure of the contract in which it is contained does not affect the arbitration provision itself. *Id.* at 502, 692 N.E.2d at 577–578. Rather, the arbitration clause remains the vehicle by which the legitimacy of the remainder of the contract is decided. *Id.*

The Supreme Court went on to find that there was no evidence that the defendant discussed arbitration at all with the plaintiff, much less made a representation about it. *Id.* Indeed, arbitration was never brought up. *Id.* As there was no evidence of fraudulent inducement of the arbitration provision, the Supreme Court held that the trial court erred in denying the motion for stay. *Id.* at 504, 692 N.E.2d at 579–580.

Given the holding in *ABM Farms,* one cannot rely on *Legue* for the proposition that an R.C. 2711.02 motion for stay can be defeated by an assertion that the contract in general was fraudulently induced and/or by requesting rescission thereof. Appellants make no assertion of fraudulent inducement as to the underlying contract in general or the arbitration agreement itself. Further, and as indicated above, appellants have not requested rescission. Hence, appellants' reliance upon *Legue* is misplaced.

Rather, appellants' main contention is that the contract violates several provisions of the CSPA and is therefore unenforceable. Appellants cite cases such as *Countrymark Coop., Inc. v. Smith* (1997), 124 Ohio App.3d 159, 164, 705 N.E.2d 738, 741–742, and *Elsea, Inc. v. Stapleton* (July 2, 1998), Lawrence App. No. 97CA45, unreported, 1998 WL 391943, in support of the proposition that contracts that violate statutes are unenforceable. However, such cases do not support appellants' contention that arbitration is precluded in the case at bar.

Again, there is no authority for the proposition that an arbitration panel cannot determine the issue of whether a contract violates certain statutory provisions. As stated in *ABM Farms,* the arbitration clause remains the vehicle by which the legitimacy of the remainder of the contract is decided. *ABM Farms* at 502, 692

N.E.2d 574. Appellants also cite *Zalecki v. Terminix Internatl., Inc.* (Feb. 23, 1996), Lucas App. No. L–95–156, unreported, 1996 WL 76052, and *Rolling v. Ohio State Home Serv., Inc.* (July 14, 1993), Medina App. No. 2157, unreported, 1993 WL 261568, both of which involved claims under the CSPA. However, these cases do not support appellants' arguments. First, both cases, unlike the present one, involved claims that the contracts were fraudulently induced. Second, both were decided before *ABM Farms,* which, as indicated above, requires a showing that the arbitration clause itself was fraudulently induced. Again, appellants make no such allegation here.

■ We also reject appellants' contention that the arbitration clause is invalid on the grounds that the contract is unconscionable. Soon after *ABM Farms* was decided, the Supreme Court decided *Williams, supra.* The Supreme Court upheld the trial court's denial of a motion to stay and to compel arbitration. In so holding, the Supreme Court stated that the record clearly would support a finding that the arbitration clause violated principles of equity, given all the facts and circumstances of the case, and that the trial court, in essence, had made a determination that the arbitration clause was invalid on grounds of unconscionability. *Id.* at 472, 700 N.E.2d at 865–866. It was noted that the plaintiff had submitted an affidavit to support her challenge to the specific validity of the arbitration clause. *Id.* The Supreme Court further noted that the presumption in favor of arbitration should be substantially weaker in a case such as the one before it, when the arbitration clause itself appears to be adhesive in nature, and there is considerable doubt that any true agreement to submit disputes to arbitration ever existed. *Id.* at 473, 700 N.E.2d at 866–867.

Appellants contend that this case is similar to *Williams* in that the contract herein has some aspects of an adhesion contract. Appellants also emphasize that the arbitration clause was on the back of the contract and was printed in small type. We disagree with appellants' contentions. First, there are no "strong indications," as there were in *Williams,* that the contract and/or arbitration clause were adhesive in nature. In his affidavit, Mr. Vincent stated that at the time he and his wife signed the contract, they were unaware that it contained an arbitration clause. Appellants clearly did not read the entire contract. Further, there is no evidence to suggest that the arbitration clause was non-negotiable. Indeed, appellants did not even realize such clause existed due to their failure to read the entire contract; therefore, the issue would never have come up. Last, there is no evidence that had appellants been aware of the arbitration clause, they would have tried to remove such clause from the contract or would not have signed the contract.

We agree with appellants that the *Williams* case sets forth an exception to the syllabus of *ABM Farms* for situations in which the Supreme Court of Ohio views

a requirement to arbitrate as unconscionable. However, the Supreme Court has not yet provided clear guidance as to when a consumer transaction is unconscionable. In the *Williams* case, an elderly woman was sold home-improvement services by a door-to-door salesman. She obtained two loans to pay for the services and did in fact pay for the services; however, the services were never completed. Three members of the Supreme Court of Ohio would have required her to arbitrate her claims, but a four-member majority found the arbitration clause unenforceable under the circumstances.

■ Given the present state of the Supreme Court case law, trial courts apparently must conduct a case-by-case review of the facts to see if enforcement of an arbitration provision would be unconscionable. While arbitration provisions might be unenforceable in the context of the sale of property, goods, or services that could be deemed necessities—such as shelter or motor vehicles—we do not believe that an arbitration provision in a contract for the sale of dance lessons is automatically unconscionable. We, therefore, believe the trial court had the power to enforce the arbitration provision here.

We also note that this case is unlike *Divine Constr. Co. v. Ohio–American Water Co.* (1991), 75 Ohio App.3d 311, 599 N.E.2d 388, in that in the case at bar, there is no allegation or evidence that the contract was not executed and therefore never existed. The issue of whether a contract violates a statute (which is what appellants contend here) and, if so, the enforceability of such contract, is distinguishable from whether a contract was ever formed. Again, an arbitration panel can determine whether the contract violates the CSPA.

In summary, appellants' contentions are unpersuasive. The arbitration clause covers the claims asserted by appellants. There are no impediments to application of the arbitration clause. Therefore, the trial court did not err in granting appellee's motion for a stay pending arbitration.

Accordingly, appellants' sole assignment of error is overruled.

Having overruled appellants' assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.