[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Pamela Gantzer and Leslie E. Alcorn, wife and husband, filed a complaint alleging that Genus Credit Management Corporation ("Genus") had violated Ohio law, the Consumer Sales Practices Act, and the Credit Services Organization Act by operating a "debt pooling company" and/or a "credit services organization" without a license. Genus filed a motion to compel arbitration pursuant to the arbitration clause in the contract between it and Gantzer and Alcorn. The trial court overruled the motion, stating only that the arbitration clause was "unfair."
The arbitration clause was contained in the "Easy Pay Client Agreement" signed by the parties. Initially, Genus faxed the two-page contract to Gantzer and Alcorn. Gantzer and Alcorn modified several of the contract terms, including the monthly payment amount, the date the first payment would be debited from their bank account, and the date on which each subsequent monthly debit would be made. After making the modifications, Gantzer and Alcorn signed the contract.
 The first page of the contract contained an acknowledgement that stated, in part the following:
 You have read the entire Agreement, including the attached "Terms of Debt Management" and applicable disclosures.
 You have had an opportunity to ask us questions about the agreement, and the DMP and to discuss the Agreement and programs with your own advisors.
* * *
 Your monthly repayment amount includes a voluntary contribution to us of $2 per account per debt management payment (but in no case more than $30) to help defray costs of postage and handling related to the DMP.
The arbitration clause provided as follows:
 Unless otherwise provided to the contrary, any and all disputes between us that cannot be amicably resolved shall be determined solely and exclusively by arbitration in accordance with the Rules of the American Arbitration Association.
 Gantzer and Alcorn complained that they were not given the opportunity to decline the "contribution" of two dollars per month per creditor. It is undisputed that the parties did not discuss the arbitration clause itself.
The sole assignment of error alleges that the trial court erred in denying Genus's motion to compel arbitration and to stay the proceedings pending that arbitration.
Arbitration is encouraged as a method of resolving disputes, and a presumption favoring arbitration arises when the claim in dispute falls within the scope of an arbitration provision. See Williams v. AetnaFinancial Co. (1998), 83 Ohio St.3d 464, 700 N.E.2d 859. R.C. Chapter 2711 governs arbitration. The Ohio Supreme Court in ABM Farms, Inc. v.Wood (1998), 81 Ohio St.3d 498, 692 N.E.2d 574, offered these observations:
 R.C. 2711.01 more generally acknowledges that an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits:
 "(A) A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."
 R.C. 2711.01 (A) refers to the arbitration provision in a contract, and notes that it is valid unless revocable under contract law. Because the arbitration clause is a separate entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself. It remains as the vehicle by which the legitimacy of the remainder of the contract is decided.
 Id. at 501-502, 692 N.E.2d at 577-578 (emphasis in original). The court held as follows:
 To defeat a motion for [a] stay brought pursuant to R.C. 2711.02, a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced.
 Id., syllabus.
The trial court is thus limited to deciding questions as to the validity of the arbitration clause itself, leaving questions as to the validity of the entire contract to be determined in arbitration. SeeWeiss v. Voice/Fax Corp. (1994), 94 Ohio App.3d 309, 640 N.E.2d 875;Rosser v. Terminix Intl. Corp. (Dec. 26, 1997), Hamilton App. No. C-961067, unreported. Any doubt as to the arbitrability of an issue should be resolved in favor of arbitration. See Ohio State Dept. ofAdmin. Servs. v. Moody/Nolan Ltd., Inc. (Dec. 12, 2000), Franklin App. No. 00AP-336, unreported. Nothing in the Consumer Sales Practices Act precludes an arbitration panel from ruling on issues arising under the act. See Vincent v. Neyer (2000), 139 Ohio App.3d 848, 745 N.E.2d 1127.
Gantzer and Alcorn did not assert that the arbitration clause itself was fraudulently induced or invalid. Rather, they alleged that the entire contract was invalid. Further, there are no "strong indicators" that the contract or the arbitration clause was adhesive in nature. See id. There is no evidence to suggest that the arbitration clause was not negotiable. In fact, Gantzer and Alcorn modified several of the terms before signing the contract. There is nothing in the record to suggest that the enforcement of the arbitration provision would be unconscionable or unfair. Therefore, the trial court abused its discretion in denying the motion to compel arbitration. The assignment of error is sustained.
Therefore, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with law and this Judgment Entry.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Doan and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.